IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| **PLAINTIFF,** | * |
| | * |
| v. | * CASE NO. 2:07cr00077-WHA-WC-1 |
| | * |
| **COURTNEY COLVIN** | * |
| **DEFENDANT.** | * |

SENTENCING MEMORANDUM

I.  INTRODUCTION

[E]very lawyer engaged in defending criminal cases knows that often a finding of guilt is a foregone conclusion and that the real issue centers about the severity of the punishment. *Smith v. United States,* 223 F.2d 750, 751 (5th Cir. 1955).

The *Booker* decision has two parts. In the first part, the Court held that the Federal Sentencing Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, violated a defendant's right to a jury trial under the Sixth Amendment. This was so because the Guidelines required a judge to find facts that can increase a defendant's sentence beyond what could be imposed solely based on the jury's verdict. As a remedy, in the second part, a different majority of the Court severed two parts of the Act, 18 U.S.C. § 3553(b)(1), which made the guidelines mandatory, and 18 U.S.C. §3742(e), which mandated a *de novo* standard of review. With these modifications, the Court noted that "the Federal Sentencing Act . . . makes the Guidelines effectively advisory." *Booker*, 125 S. Ct. at 757.

The return to the exercise of true judicial discretion in sentencing is explained in these words of the Supreme Court:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issue presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

Booker, 125 S. Ct. at 750 (citations omitted).

With the decision by the United States Supreme Court that the Federal Sentencing Guidelines were unconstitutional, its Booker decision holds that a defendant's Sixth Amendment rights are violated where the mandatory guidelines required judges to find facts resulting in specific sentencing consequences having the effect of increasing a defendant's sentence beyond that range which would apply either by a jury's verdict or by a plea of guilty by the defendant. The Court, in a separate majority opinion, which has been described as the "remedial" opinion, deemed that the guidelines are now merely "advisory" and that district judges are to "consider" the guideline ranges presented in the sentencing context while having the discretion to form a sentence in light of other statutory concerns, specifically those presented in 18 U.S.C. §3553(a). Id.

## II. WHAT MUST BE CONSIDERED IN POST-BOOKER SENTENCING

Post-Booker the guidelines become but one of several factors to be considered by the court in the sentencing process. First, the guideline range, including policy statements are to be considered under 18 U.S.C. § 3553(a)(4) and (5) as an advisory guide. Applicable departures under the guidelines are also to be considered. Now the courts must also consider the statutory directives presented in other parts of § 3553(a) as well as the Congressional directive that "No

limitation shall be placed on the information concerning the background, character and conduct of the defendant in the course of the sentencing process. 18 U.S.C. § 3661. In other words the Court is free to sentence just like it did pre-November 1987.

### III. GUIDELINE CALCULATION

At the time the pre-sentence report was prepared, Colvin was represented by the Honorable Kevin Butler. The undersigned inherited the case and entered an appearance. Prior to the undersigned's entry of an appearance, a presentence report had been prepared and objections had been filed. Colvin's sentencing has been postponed for reasons outlined to the Court in camera.

Presently before the Court are certain objections to the presentence report. In order for the Court to understand the objections, it is necessary for the Court to understand the Sentencing Guidelines and impact of the minimum mandatory sentence pursuant to 18 U.S.C. §924(c).

Using a marijuana equivalency for purposes of guideline calculation, the probation officer suggested between 3,000 and 10,000 kilograms of marijuana resulting in a base level of 34. The probation officer also suggested a 4-level role enhancement pursuant to U.S.S.G. §3B1.1(a). The total guideline level would be 38, minus 3 for acceptance of responsibility pursuant to U.S.S.G. §3E1.1 resulting in an aggregate base level of 35. His Criminal History Score has been established as IV, resulting in suggested guidelines of 235-293 months. As to the 924(c) conviction, the probation officer has suggested that the normal five year minimum increases to a ten year minimum because the firearm in question was discharged by the defendant. Therefore, under the best case scenario, if the Court follows the recommended sentencing guidelines, Colvin's minimum sentence on the drugs would be 235 months. As will be outlined later, this is an excessive sentence, even considering the evidence in the light most favorable to the Government.

**OBJECTIONS TO PRESENTENCE REPORT**

Former counsel for Colvin objected to certain portions of the presentence report and those objections are adopted herein as if fully set forth by the undersigned and incorporated for purposes of the Court's consideration. As outlined in the addendum to the presentence report, these objections are as follows:

(1) **Role Enhancement** - The defendant objected to 4-level role enhancement pursuant to U.S.S.G. §3B1.1(a). The enhancement is based on criminal activity for which Colvin accepted responsibility that the conduct was organized by him. Any other persons present when he engaged in the transactions were merely present and were mere associates of Colvin.

In further support of this objection, Colvin makes the following argument.

The Appellate Courts have addressed numerous factors that support aggravating role enhancements pursuant to U.S.S.G. §3B1.1. Some of these are noted below and it is argued they are not present in this case. All persons receiving aggravating role organizer or leader must exercise some control over others. *United States v. Quigley*, 373 F.3d 133, 362, United States App. DC 124 (2004).

There is no evidence that Colvin played a leadership role in this case. Therefore, the leadership role is not overwhelming or uncontroverted. *United States v. Burren*, 190 Fed App 257 (4th Cir. 2006).

Colvin argues, as with all of the suggested sentencing enhancements, each should be charged in the indictment and proven to a jury beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. _, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004); and *Apprendi v. New Jersey* 530 U.S. 466, 120 S.Ct. 2348 (2000).

There is no evidence there were ever meetings to establish terms or determine details on logistics. *United States v. Skoczeav*, 405 F.3d 577 (7th Cir. 2005) *United States v. Singer*, 152

Fed. App. 869, Opinion Supplemented 176 Fed. Appx. 66, cert denied 1227 S.Ct. 175 (11th Cir. 2005). There is no evidence Colvin devised a scheme with others. *United States v. Mandhai*, 375 F.3d 1243 (11th Cir. 2004); *United States v. Plan carte-Vasquez*, 450 F.3d 848 (8th Cir. 2007) In fact he controlled none.

U.S.S.G. §3B1.1 Aggravating Role. Application Notes, Background provides the rationale for this adjustment. In part it addresses relative responsibilities. It also notes that it is likely that persons who exercise a supervisory or managerial role in the commission of an offense had to profit more from it.

There was no evidence Colvin ever gave directions, monitored the process, or received a greater portion of the proceeds. *United States v. Shallal*, 420 F.3d 434 (8th Cir. 2005); *United States v. Sheikh*, 367 F.3d 683 (7th Cir. 2004)

In distinguishing a leadership or organizational role from one of mere management or supervision titles such as "kingpin" or "boss" are not controlling. Factors the Court should consider include (1) the exercise of decision making authority, (2) the nature of the participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime (5) the degree of participation in planning or organization of the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. *United States v. Quigley*, 373 F.3d 133 (D.C. Cir. 2004).

The District of Columbia Circuit in *United States v. Graban*, 162 F.3d 1180, 1185 (1998) recognized that all persons receiving an enhancement under 3B1.1 must exercise some control over others.

The purpose of the aggravating role enhancement is to penalize more heavily those defendants who bear greater responsibility for crimes involving many individuals, both to reflect their greater degree of culpability and in recognition that such individuals are likely to profit more from the crime and pose a greater danger to the community and risk of recidivism. See §3B1.1,

comment. (background)  *United States v. Wasz*, 450 F.3d 720 (7th Cir. 2006).

A defendant's role as an organizer or leader is a factual finding that is reviewed for clear error to determine if the enhancement under §3B1.1 is applied appropriately.  *United States v. Ramirez*, 426 F.3d 1344 (11th Cir. 2005)

The probation officer disagreed and indicated that, at the least, Colvin directed the activities of Vincent Spencer (the doorman) and Darrell McCall (the middle man).

(2) **924(c)(1)(A)(iii)**: Colvin submits to the Court that he entered a plea of guilty to 924(c)(1)(i), which only subjected him to a minimum 5 year penalty. The argument is that the probation officer has erred by suggesting that the 10 year minimum should apply because the weapon was discharged given the fact that Colvin did not plead guilty to that specific charge. In other words, Colvin would be sentenced for a crime for which he did not plead guilty nor was found guilty and such, there would be an insufficient factual basis to support the conviction.[1]

In response to this objection, the probation officer indicated that the argument should fail because Colvin, although pleading guilty to 924(c)(1)(A), the penalty section is set forth in §924(c)(1)(A)(i-iii). The probation officer indicated that the basis for this is the investigative information, which revealed that the firearm the Defendant possessed was discharged by the Defendant therefore making him subject to the statutory penalty of not less than 10 years.

The Defendant submits that the ten year minimum should not apply based on the argument and his Sixth Amendment rights as articulated in *Apprendi, Blakely* and *Booker*.

**Additionally, Colvin argues that there is insufficient proof that the weapon was discharged in relation to a drug trafficking offense.**  In fact, the uncontroverted evidence is that the weapon was discharged in response to an unrelated burglary attempt.

---

[1] Further, to use this sentencing enhancement against Colvin, would be in violation of his Sixth Amendment right to a jury trial pursuant to *Apprendi v. New Jersey* 530 U.S. 466, 120 S.Ct. 2348 (2000), *Blakely v. Washington*, 542 U.S. _, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004), and *United States v. Booker*, 543 U.S. _, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005).

**(3) Paragraph 24**: The Defendant objected to paragraph 24 wherein it stated that the Defendant resumed drug trafficking activities and the defense requested that probation officer provide counsel with the basis for this statement. The probation officer's response was that this information was obtained from the discovery provided by the Government. Colvin submits there is no proof supporting this statement and it should be stricken.

### IV.  CONSIDERATION OF THE 3553(A) FACTORS IN THIS CASE

The Court should consider the need for the sentence to reflect the seriousness of the offense and the need to deter Colvin and others from committing further crime. *See* §3553(a)(2). Further, the Court can and should consider the panolopy of other mitigating arguments now permissible under *Booker*.

### A.  DEPARTURES/VARIANCES

**(1) Information Defendant Provided Used Against Him**

The procedural history of this case is somewhat unique. On December 1, 2006 the residence occupied by Colvin and his wife was the scene of a shooting. Specifically, Spencer was shot outside of the residence by an unknown assailant. Law enforcement was summoned to the scene and a subsequent search of the residence was conducted wherein large quantities of cash, controlled substances, and firearms were found. Colvin was not present at the time. His wife was present and she was arrested and charged with drug trafficking in State Court. It was obvious that the case was going to become a Federal case. She was represented by counsel.

The record would indicate that Colvin, concerned over his wife being held accountable for the contents of the residence, began to reach out to law enforcement for purposes of exonerating and exculpating his wife. Colvin's first attempt to do so was through his wife's lawyer, Dan Hamm. Specifically, Colvin's wife was debriefed on December 5, 2006. An arrangement was made for Colvin to be debriefed by law enforcement and give an interview through his wife's

attorney, Dan Hamm, at Hamm's office. Given that Colvin, at that time, was not in custody, he was free to come and go. He was able to complete an interview without counsel wherein he exculpated his wife and inculpated himself. This included facts regarding with whom he was involved and the fact that a weapon had been discharged in response to a burglary. On December 8, 2006, Colvin was debriefed by law enforcement officers without counsel at which time he provided exculpatory information exonerating his wife, inculpatory information about his own drug activity, and the discharge of the weapon for which is now the subject of a 10 year minimum mandatory sentence.

On both occasions, December 5th and 8th, Colvin was interviewed by law enforcement without the benefit of counsel. Had Colvin been represented by counsel, he would have provided those statements pursuant to a Rule 11 Proffer agreement with the United States Attorney's Office. Additionally, it would have been agreed that the statements he gave against himself, which were inculpatory, with regard to people with whom he was involved and the discharge of the weapon, would have been protected under United States Sentencing Guidelines §1B1.8.

Therefore, this is a factor that this Court should consider in mitigation because Colvin's own admission has resulted in a suggested additional five year minimum mandatory sentence.[2] It should also be noted that the weapon that was discharged was discharged in response to a burglary attempt wherein Colvin and his wife were in physical danger.

Given that the 924(c) statutorily mandates a minimum mandatory sentence, there is no applicable guideline departure available. However, given the Court's new found discretion after *Booker*, this Court could consider the fact that the discharge of the weapon was an effort to avoid a greater harm. Pursuant to the United States Sentencing Guidelines manual Section 5K2.11, the Court can consider, as a basis for departure, the lesser harm theory. Counsel recognizes in this

---

[2]Obviously if Colvin prevails on his objection to the suggested 10 year minimum for discharge of a weapon, this argument and the lesser harms argument (to follow) would be moot.

case that the lesser harm would fail under 924(c), which is not impacted by the Guidelines. However, counsel believes the Court has the discretion to factor this in as a mitigating factor in determining the sentence in the drug case.

### (2) Cooperation

Further, at the time this motion is being filed, it is clear the Defendant will not receive a 5K1 motion from the Government for a downward departure. Counsel expects to provide the Court, in camera, a detailed summary of the extent of Colvin's cooperation, which should be a mitigating factor absent a 5K1 motion filed by the Government.

### (3) Defendant Turned Himself in to the Authorities as Noted in Section A-1.

The defendant turned himself in to law enforcement after his wife was charged in State Court. This saved valuable law enforcement resources and should be considered a mitigating factor when imposing sentence.

### (4) Disparity Between Crack Cocaine and Powder Cocaine. *United States V. Kimbrough*, 552 U.s. ___ (2007).

"While rendering the Sentencing Guidelines advisory, *United States v. Booker* 543 U.S. 220, 245 (2005), we have nevertheless preserved a key role for the Sentencing Commission. As explained in *Rita*[3] and *Gall*, district courts must treat the Guidelines as the "starting point and the initial benchmark," *Gall v. United States*, ante, at 11. ...

**Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve §3553(a)'s purposes, even in a mine-run case**. (emphasis added)

---

[3] *Rita v. United States*, 551 U.S. __,__ (slip. Op. At 11).

### (5) U.S.S.G. 1B1.4 Supports Guideline Departure

U.S.S.G. §1B1.4 information to be used in imposing sentence (selections a point within the guideline range or departing from the guidelines) states: "In determining the sentence to impose within the guideline range, or whether a departure from the guideline is warranted, or whether a departure from the guideline is warranted, the Court may consider, without limitation, any information concerning the defendant, unless otherwise prohibited by law." (See 18 U.S.C. §3661.) Colvin argues that use of the high guidelines and minimum mandatory sentence overstates the seriousness of the conduct used for punishment purposes. As such a downward departure is warranted.

### (6) Lesser Harms 5k2.11

Pursuant to U.S.S.G. §5K2.11 lesser harms, a defendant may commit a crime in order to avoid a perceived greater harm. "In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct..."

In the instant case the discharge of the weapon was in order to protect the defendant and his wife from the greater harm of harm to them during a burglary.

### V. CONCLUSION

Again, with the exception of Colvin's own statements, which were not protected under Rule 11 or 1B1.8 of the United States Sentencing Guidelines, he has provided a name of an individual with whom he was involved that has been used as the basis, in part, for the suggested role enhancement. The involvement with the doorman was referenced, in addition, by his wife when she was debriefed by law enforcement. The fact that an individual guarded his house while he was gone is not indicative of one involved in the drug trade with Colvin. It is just as plausible that this individual was protecting the house from looters who would be stealing personal property belonging to the Defendant and his wife.

The leadership role should not apply in the instant case for the foregoing reasons and citations to authority. Absent the 4-level enhancement, the base offense level would be 34 minus 3 for acceptance of responsibility equaling an aggregate 31. A base level of 31 with a criminal history score of IV would call for Guidelines of 151 to 188 months. The bottom of the Guidelines decision would call for a sentence of 151 months. When the drug guidelines would be combined with the minimum mandatory of 60 or 120 month sentence the total sentence would be 211 or 271 months. Given the overstating of the seriousness of the offense conduct by the 5 or 10 year minimum sentence on the 924(c), Colvin would argue to this Court that the departure/variance arguments justify a departure from the bottom of the Guideline range on the drug case of at least 50% range of 75 months resulting in a total sentence of 151 or 195 months. This is between 13 to16 years. However, this does not depreciate the seriousness of the offense or promote disrespect for the law.

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: ASB7956J64S

**CERTIFICATE OF SERVICE**

I hereby certify that on March __, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Verne Speirs
AUSA
P. O. Box 197
Montgomery, Alabama 36101

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: ASB7956J64S